UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANNA HARRIS-HARDEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:20-cv-02485-JPH-DLP |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**Order Denying Motion to Vacate, Set Aside, or Correct Sentence
and Denying a Certificate of Appealability**

Now before the Court is Anna Harris-Harden's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, Ms. Harris-Harden's petition is **denied**, this matter is **dismissed with prejudice**, and a Certificate of Appealability **shall not issue**.

**I. Legal Standard**

A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under § 2255 is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Harris v. United States*, 13 F.4th 623, 627 (7th Cir. 2021) (internal quotations and citations omitted).

1

## II. Background

The facts are taken from Ms. Harris-Harden's underlying criminal case. *See United States v. Harris-Harden*, No. 1:18-cr-00211-JPH-TAB-1 (S.D. Ind. 2018) ("Crim Dkt.").

During a search of Ms. Harris-Harden's residence, law enforcement officers recovered 218 grams of fentanyl, a small amount of cocaine, a money counter, a money ledger, and two firearms and ammunition. Crim. Dkt. 51 ¶ 18. And in a vehicle that Ms. Harris-Harden had rented, they also found over $6,000 in United States currency. *Id.* She was charged with one count of possessing with the intent to distribute forty grams or more of Fentanyl ("Count 1"), *see* 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and one count of possessing with the intent to distribute cocaine ("Count 2"), *id.* §§ 841(a)(1) and (b)(1)(C). Crim. Dkt. 1.

Ms. Harris-Harden retained counsel and filed a petition to enter a plea of guilty pursuant to Rule 11(c)(1)(B). Crim. Dkt. 51; *see* Fed. R. Crim. P. 11(c)(1)(B). In her plea agreement, she agreed to plead guilty to Count 1 and further agreed that the government would be able to establish beyond a reasonable doubt the facts set forth as the factual basis for the guilty plea. Crim. Dkt. 51 at ¶¶ 1; 18. The government agreed to dismiss Count 2, recommend that Ms. Harris-Harden receive a three-level reduction for her acceptance of responsibility, and recommend a sentence within the stipulated guideline range of 57–71 months,

based on an adjusted offense level of 25, and a criminal history category I. *Id.* ¶¶ 1, 2, 11, 22; Crim. Dkt. 55 ¶ 63.

In the plea agreement, Ms. Harris-Harden acknowledged (1) she had told her attorney the facts known to her concerning the indictment and that her attorney had counseled her as to the nature and cause of every accusation against her; (2) she had read the entire plea agreement and discussed it with her attorney; (3) she understood all the terms of the plea agreement and that those terms correctly reflected the results of plea negotiations; (4) she was fully satisfied with her attorney's representation during all phases of her case; and (5) she was voluntarily pleading guilty because she was guilty of the crimes to which she was entering a plea. Crim Dkt. 51 at ¶ 28.

At a combined plea and sentencing hearing, Ms. Harris-Harden acknowledged she had fully discussed the charges and plea agreement with her attorney, and that her attorney had explained she would be sentenced within the applicable guideline range. Crim Dkt. 66 at 8–10. She also confirmed she was satisfied with counsel's representation. *Id.* at 14–15. She pled guilty to Count 1 and was adjudged guilty. *Id.* at 18.

Based on the presentence investigation report, Ms. Harris-Harden's guideline range was 57–71 months but adjusted to 60–71 months because of the statutory minimum. *See* 21 U.S.C § 841(b)(1)(B); U.S.S.G. § 5G1.1(c)(2). She acknowledged that she understood the report, that it was accurate, and that she did not have any questions. Crim Dkt. 66 at 19. Counsel stated he had "spent a great deal of time" researching whether Ms. Harris-Harden was safety-valve

3

eligible, *id.* at 30, and recommended the statutory minimum in the event it did not apply. *Id.* at 31; *see also* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The government objected to application of the safety-valve provision because it was not a part of the plea agreement and it did not apply since Ms. Harris-Harden possessed a firearm in connection with her offense. Crim Dkt. 66 at 32.

The Court determined that the safety-valve provision did not apply for the reasons set forth by the government and sentenced Ms. Harris-Harden to a period of imprisonment of 71 months followed by four years of supervised release. *See* 21 U.S.C. § 841(b)(1)(B), U.S.S.G. § 5D1.2(c); *see also* Crim Dkt. 61.

Ms. Harris-Harden filed the present petition under § 2255 on July 31, 2020. Dkt. 1. In her petition she asserts her trial counsel was ineffective for three reasons:

> (1) Failure to communicate – (Attorney did [not] communicate with me at PSI Interview, or before sentencing, had contact twice, during PSI reading and at plea signing)
>
> (2) Failure to negotiate a plea deal or cooperation deal – (Attorney told me AUSA was not interested in any information I had which is substantial, and did not even attempt to make any deal at all, never spoke [with] AUSA one time which came out at sentencing)
>
> (3) Improper Communication and input of the safety valve (was told I qualified for safety valve multiple times and was told prosecutor agreed. No communication between AUSA and attorney ever occurred.

Dkt. 1 at 4. The government timely responded and requested that Ms. Harris-Harden's petition be denied. Dkt. 11. Ms. Harris-Harden did not file a reply.

### III. Discussion

The government argues that Ms. Harris-Harden's petition should be denied because (1) her arguments are so underdeveloped that they should be considered waived, and, even if her arguments are not waived, (2) she has failed to demonstrate ineffective assistance of counsel under *Strickland*. Because Ms. Harris-Harden's petition fails on the merits, the Court declines to address the government's waiver argument. *United States v. Harris*, 51 F.4th 705, 721 (7th Cir. 2022) ("[Defendant's] claim fails on the merits, and we think it prudent to decide his appeal on that simpler basis.") (citing *Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013) ("There is no necessary priority among non-jurisdictional reasons for rejecting a suit or claim.")).

To demonstrate ineffective assistance of counsel, a petitioner must satisfy a two-step standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Thurston v. Vanihel*, 39 F.4th 921, 928 (7th Cir. 2022). First, a petitioner must demonstrate that her trial attorney's performance fell below an objective standard of reasonableness. *Id.* Second, the petitioner must show counsel's deficient performance prejudiced the defense. *Id.*

There is a presumption that counsel's performance was adequate. *Lumpkin v. Hermans*, 33 F.4th 403, 409 (7th Cir. 2022) ("Because of the difficulties inherent in making the evaluation of counsel's performance, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). For prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the

5

result of the proceeding would have been different." *Thurston*, 39 F.4th at 928–29. If a petitioner fails to show either deficient performance or prejudice, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

Here, Ms. Harris-Harden has not shown prejudice on any of her claims. First, she has not shown that she was prejudiced by not communicating with her counsel before or during her interview with Probation. She has not explained how communicating with counsel would have led to different and more favorable findings and conclusions in the Presentence Investigation Report. Indeed, it's difficult to imagine how her answers could have been materially different when she has acknowledged under oath that the Report was accurate. Dkt. 11 at 14. Moreover, a "probation officer does not have an adversarial role in the sentencing proceedings." *United States v. Jackson*, 886 F.2d 838, 844 (7th Cir. 1989). Ms. Harris-Harden also has not argued that the outcome of the sentencing hearing would have been different had counsel met with her before the sentencing hearing. Therefore, she has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thurston*, 39 F.4th at 928–29; *see United States v. Peterson*, 711 F.3d 770, 780 n.4 (7th Cir. 2013) (finding lack of prejudice where counsel did not receive the probation officer's recommendation prior to sentencing because there were no allegations petitioner's sentence would have been somehow different).

Next, Ms. Harris-Harden has not shown prejudice regarding her assertion that counsel failed to negotiate a cooperation agreement with the government.

6

Indeed, the AUSA "was not interested in any information she had." Dkt. 1 at 4. There is no evidence that the government would have offered Ms. Harris-Harden a cooperation agreement or more favorable plea agreement had counsel performed differently. *See Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017) ("Because [Petitioner's] prejudice argument centers on his attorney's inability to secure a plea agreement for him, [Petitioner] had to show—at a minimum—that the prosecutor would have actually offered him a deal had his attorney been competent.").

Finally, Ms. Harris-Harden cannot show prejudice regarding her allegations that counsel repeatedly informed her she was safety-valve eligible. She has not alleged, much less shown, that had she known earlier that she did not qualify for the safety valve, she would not have pled guilty and instead proceeded to trial. *Gish v. Hepp*, 955 F.3d 597, 605 (7th Cir. 2020) ("[On a claim] that [her] trial counsel rendered ineffective assistance in advising [her] to plead guilty . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial."). Similarly, she has not shown or alleged that, in fact, she qualified for the safety valve.

The record in the criminal case clearly demonstrates that Ms. Harris-Harden possessed two firearms and ammunition along with 218 grams of fentanyl, a money counter, and a money ledger. Crim. Dkt. 51 at 7, ¶ 18 (factual basis in Plea Agreement); Crim. Dkt. 63 at 13 (portion of transcript of change of plea and sentencing hearing where Ms. Harris-Harden admits that the factual

basis in Plea Agreement is accurate and true).  This precluded application of the safety valve. 18 U.S.C. § 3553(f)(2) (to qualify for safety valve, the court must find, among other things, that the defendant did not possess a firearm in connection with the offense).  Moreover, at the time of sentencing, Ms. Harris-Harden had not given the government a proffer statement, dkt. 66 at 32, another prerequisite for application of the safety valve.  18 U.S.C. § 3553(f)(5)

Because Ms. Harris-Harden cannot demonstrate her defense was actually prejudiced on any one of her allegations, her petition must be **denied**.

## IV. Conclusion

For those reasons, Ms. Harris-Harden's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **denied**, and this action is **dismissed** with prejudice. Judgment consistent with this Order shall now issue, and **a copy of this Order shall be docketed** in *United States v. Harris-Harden*, No. 1:18-cr-00211-JPH-TAB-1 (S.D. Ind. 2018). The motion to vacate in the underlying criminal action, Crim. Dkt. [78], shall also be **terminated**.

## V. Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of her habeas petition, rather, she must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Petitioner has failed to show that reasonable jurists would find it "debatable whether the petition states a valid

claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**SO ORDERED**.

Date: 11/17/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ANNA HARRIS-HARDEN
16483-028
LEXINGTON - FMC
LEXINGTON FEDERAL MEDICAL CENTER
Inmate Mail/Parcels
P.O. BOX 14500
LEXINGTON, KY 40512

All Electronically Registered Counsel

9